**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **DONNA MESCHEL LASCOLA** | * | CIVIL ACTION |
| | * | |
| **VERSUS** | * | NO. 08-4802 |
| | * | |
| **SCHINDLER ELEVATOR CORPORATION, ET AL.** | * | SECTION "B"(3) |

## ORDER AND REASONS

Defendant Schindler Elevator Corporation ("Schindler") has filed a Motion for Summary Judgment (Rec. Doc. No. 43) on all claims against it by Plaintiff Donna Lascola and Cross-Claimant Hertz Texaco Center, LLC and Hertz Investment Group, Inc. (collectively referred to hereinafter as "Hertz"). After considering the motion, responses, and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 43) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Motion in Limine to Exclude Expert Testimony of Dr. Charles Bain (Rec. Doc. No. 65) is **GRANTED** and that the underlying motion shall be filed into the record of the Court.

**IT IS FURTHER ORDERED** that, after considering the Motion in Limine to Exclude Expert Testimony of Dr. Charles Bain and the opposition thereto, said motion is **GRANTED**.

## *BACKGROUND*

This action arises out of an alleged accident on September 30, 2008 in the 601 Tchoupitoulas parking garage in the central business district of New Orleans. Donna Lascola regularly parks in the Tchoupitoulas garage and she uses the elevator each morning to descend to the first level of the garage. On the morning of the incident, Lascola claims that she took the elevator at about 9:20 a.m. and that she suffered injuries as a result of an elevator malfunction that caused it to shake and fall as it descended from the eighth floor to the first floor. Upon exiting the elevator, Lascola noticed a sign on the elevator's exterior doors indicating that it was out of order.

Prior to the alleged accident involving Lascola, but on the same morning, Reagan Paciera rode the elevator shortly after 8:30 a.m. and also noticed that the elevator jerked and bounced during descent. Paciera reported the elevator malfunction to a security guard at the Texaco Center, which is located adjacent to the parking garage. Paciera witnessed the security guard make a phone call to the parking garage. Subsequently at 8:49 a.m. an employee of Central Parking Systems of Louisiana contacted Schindler to

report that the elevator was "shaking when traveling." Schindler sent a confirmation email at 9:06 a.m. to confirm that a problem was reported and that a service technician had been contacted to investigate and repair the malfunction. Schindler claims that it has no record of any prior reports of elevator malfunction other than the phone call received at 8:49 a.m. on the day of Lascola's alleged accident.

Schindler moves for summary judgment of all claims asserted by Hertz and Lascola. Schindler argues that it is not liable because it exercised reasonable care in maintaining the elevator and is not responsible for any action or omission that could have caused the alleged accident to occur. Schindler maintains that there are no issues of material fact for a reasonable jury to conclude that the incident resulted from Schindler's negligence.

Schindler executed an elevator maintenance agreement with Hertz, which requires it to indemnify Hertz from liability for any injury resulting from Schindler's work on the elevators. In this case, Schindler argues that the indemnity clause does not apply because the accident was not the result of Schindler's maintenance of the elevator or negligence. Under Louisiana state contract law, an indemnity agreement does not operate to protect the indemnitee against a loss resulting from its own negligence, unless this intention is expressly stated in the contract. *Sovereign Ins. Co. v. Texas Pipe Line Co.*, 488 So. 2d 982 (La. 1986). Schindler

argues that the accident resulted from Hertz's failure to take the elevator out of service once it received notice of a malfunction that posed a danger to the public. Under the maintenance agreement, Schindler asserts that it has no responsibility to indemnify Hertz in this case because Hertz's own negligence caused Lascola's accident.

Schindler also argues that it properly exercised reasonable care in maintaining the elevator and therefore was not the factual cause of the accident. As evidence of proper maintenance, Schindler references Hertz's own records that describe the elevators as fully functioning each month from April to October of 2008. Schindler alleges that it has no record of the elevator malfunctioning or shaking prior to the day in question. Schindler contends that Lascola's accident alone is insufficient proof that Schindler negligently maintained the elevator.

In addition, Schindler contends that it was not the legal cause of the accident. Schindler characterizes the act of leaving the elevator on as a superseding, intervening cause that severed the action of the defendant from the harm that occurred. Defendant argues that there are no issues of material fact, that it is not liable for Lascola's injury, and that it is entitled to judgment as a matter of law.

Hertz argues that summary judgment is inappropriate because there are issues of material fact that cannot be resolved at this time. Lascola joins and adopts Hertz's motion in opposition to summary judgment pursuant to Fed. R. Civ. P. 10(c). (*See* Rec. Doc. No. 64.) Hertz contends that Schindler ignores factual evidence that contradicts the conclusion that Schindler exercised reasonable care in elevator maintenance. Hertz also emphasizes that there is conflicting expert testimony on the issue of Schindler's negligence and provision of maintenance services. Hertz argues that assessment of the expert testimony requires a credibility determination that the jury must complete and which may not be resolved during the summary judgment phase.

*DISCUSSION*

**I. Standard for Summary Judgment**

Summary judgment is available if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. of Civ. P. 56. The moving party has an initial burden of demonstrating the absence of a genuine issue of material fact. *Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co. of Am.*, 638 F.Supp.2d 692, 696 (E.D. La. 2009); *See also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment is improper if

a disputed material fact exists, which is defined as a fact that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Judicial assessment of the credibility of contradictory testimony is not appropriate for the summary judgment stage and must be reserved for the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)(holding that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict").

> **II. Contradictory Expert Testimony Presents an Issue of Fact that Precludes Summary Judgment**

Schindler, Hertz, and Lascola all provide expert testimony on the issue of whether Schindler properly maintained the elevators prior to the accident. This issue is a question of material fact that must be answered in order to determine whether Schindler's actions were negligent or the cause of Lascola's accident. John Donnelly, the expert retained on behalf of Schindler, blames Hertz and Central parking for causing the accident. Donnelly summarily concludes "that there is nothing Schindler could or should have done which would have prevented this accident." Rec. Doc. 43-12 at 5. In Donnelly's opinion, Hertz and Central Parking should have deactivated the elevator between the time that the malfunction was reported to Schindler at 8:48 a.m. and the time of Lascola's

accident at 9:20 a.m. *Id.* Schindler uses this testimony to conclude that it provided reasonable care according to industry standards of elevator maintenance and did not cause Lascola's accident.

Hertz and Lascola also gathered expert testimony, which directly contradicts Donnelly's report. Joseph Pappalardo, the expert on behalf of Lascola, provides a list of deficiencies in Schindler's maintenance record. Rec. Doc. 54-6 at 1. Leroy Gravatte, the expert hired by Hertz, testified that there is evidence that Schindler's performance fell below industry standards of reasonable care. Rec. Doc. 54-7 at 1. Pappalardo and Gravatte analyze the specific facts surrounding Lascola's accident and the quality of Schindler's maintenance services much differently than Donnelly. The weight given to contradictory expert analysis depends on the credibility allocated to each individual expert witness. Assessment of the credibility and weight of expert testimony is the function of the jury. Anderson *v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); 1 Moore's Federal Practice, § 56.14 (3d ed. Mathew Bender 2009). If a material fact cannot be resolved without making a credibility determination, summary judgment is improper. *George v. Home Depot, Inc.*, No. 00-2616, 2001 U.S. Dist. LEXIS 20627, at *9 (E.D. La. Dec. 6, 2001). Louisiana State Court decisions, although only persuasive authority, also support the legal principle that credibility determinations must be reserved

for the trier of fact. *Hamel's Farm, L.L.C. v. Muslow*, 988 So. 2d 882, 890 (La. Ct. App. 2008)(holding that the jury must decide credibility of expert testimony using the specific facts upon which the opinions are based and the professional qualifications of the expert); *Young v. Turnipseed*, 764 So. 2d 1172, 1176 (La. Ct. App. 2000). In this case, Schindler is not entitled to summary judgment, because the expert testimony on the record contains disputed facts, analysis, and contradictory conclusions. The expert opinions provided are necessary in resolving the material fact of whether or not Schindler exercised reasonable care in elevator maintenance or acted negligently according to industry standards and caused Lascola's accident. The credibility and weight assigned to each expert's testimony is a function of the jury and may not be completed at this time during the summary judgment process. Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment (Rec. Doc. No. 43) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Motion in Limine to Exclude Expert Testimony of Dr. Charles Bain (Rec. Doc. No. 65) is **GRANTED** and that the underlying motion shall be filed into the record of the Court.

**IT IS FURTHER ORDERED** that, after considering the Motion in Limine to Exclude Expert Testimony of Dr. Charles Bain and the opposition thereto, said motion is **GRANTED**. Daubert and its progeny

are meant to exclude unreliable, speculative and misleading opinion testimony. Bain's opinions here fall into all of those categories. By using himself as a sort of human guinea pig, he attempts to recreate multiple movements and reactions to movements of the human body simultaneously with or in reaction to multiple movements and reactions to movements of a downward moving elevator. To begin, with, Bain is not anatomically similar to Ms. Lascola, the Plaintiff, in any aspect of physical or mental note. Bain's planned experiment occurs over a year after the sued upon elevator incident upon a now repaired and properly aligned elevator using planned, not un-expected stops of same. For some un-explained reason, Bain chooses body parts placement and movement that appears inconsistent with Plaintiff's, version of the incident. From that he posits "biomechanically trivial accelerations...had no injury potential" regardless of medical causation findings of qualified orthopaedic physicians because, in Bain's opinion,"those physicians...are not trained to give opinions in causation". There is no evidence that the latter viewpoint is generally accepted in the medical community here or nationwide. Noteably, Bain practiced emergency and family medicine for nineteen years up until 2003 in Canada, came to the United States to become an active accident reconstructionist in several cases, and while licensed to practice medicine in Texas he is not engaged in the active practice of medicine. Both sides point out that Bain's opinions and methodologyhave either been excluded, limited or allowed in certain cases. Lastly, we are persuaded by

the findings and rationale found in *Breaud v. Werner*, Civ.#03-860-JJB-SCR (MDLA 2006)excluding Bain's opinions for similar reasons as the case of *White v. Great West Cas. Co.*, 2009 WL 2747795 (WDLA 2009)which denied exclusion of his opinions.

New Orleans, Louisiana, this 11th day of March, 2010.

UNITED STATES DISTRICT JUDGE