```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

DONNA MESCHEL LASCOLA                  *       CIVIL ACTION
                                       *
VERSUS                                 *       NO. 08-4802
                                       *
SCHINDLER ELEVATOR CORPORATION, ET AL. *       SECTION "B"(3)
```

## ORDER AND REASONS

Before the Court is Defendant Schindler Elevator Corporation's ("Schindler") Motion for Declaratory Judgment (Rec. Doc. No. 119) and responsive pleadings (Rec. Doc. Nos. 121, 125). Also before the Court is Defendants and Plaintiffs in Cross-Claim Hertz Texaco Center, LLC and Hertz Investment Group, Inc.'s ("Hertz") Motion for Summary Judgment of Breach of Contractual Defense and Indemnity (Rec. Doc. No. 123) and Schindler's opposition thereto. (Rec. Doc. No. 126). Accordingly, and for the reasons pronounced below,

**IT IS ORDERED** that Schindler's Motion for Declaratory Judgment (Rec. Doc. No. 119) be **GRANTED.**

**IT IS FURTHER ORDERED** that Hertz's Motion for Summary Judgment (Rec. Doc. No. 126) be **DENIED.**

This action arises out of an alleged accident on September 30,2008 in the 601 Tchoupitoulas parking garage in the central business district of New Orleans. Donna Lascola regularly parked in the Tchoupitoulas garage and she used the elevator each morning to descend to the first level of the garage. On the morning of the

incident, Lascola claims that she took the elevator at about 9:20 a.m. and that she suffered injuries as a result of an elevator malfunction that caused it to shake and fall as it descended from the eighth floor to the first floor.  Upon exiting the elevator, Lascola noticed a sign on the elevator's exterior doors indicating that it was out of order.

    Prior to the alleged accident involving Lascola, but on the same morning, Reagan Paciera rode the elevator shortly after 8:30 a.m. and also noticed that the elevator jerked and bounced during descent.  Paciera reported the elevator malfunction to a security guard at the Texaco Center, which is located adjacent to the parking garage.  Paciera witnessed the security guard make a phone call to the parking garage.  Subsequently, at 8:49 a.m. an employee of Central Parking Systems of Louisiana contacted Schindler to report that the elevator was "shaking when traveling."  Schindler sent a confirmation email at 9:06 a.m. to confirm that a problem was reported and that a service technician had been contacted to investigate and repair the malfunction.  Schindler claims that it has no record of any prior reports of elevator malfunction other than the phone call received at 8:49 a.m. on the day of Lascola's alleged accident.

    Plaintiff ultimately settled with Defendants, and was dismissed by order of this Court on June 23, 2010.  (Rec. Doc. No. 103).  The only remaining claim is the cross-claim by Hertz against

Schindler for contractual defense and indemnification under a Maintenance Agreement ("MA") and an addendum thereto ("Addendum"). The Court granted the parties' joint motion to resolve this matter on the Briefs at Rec. Doc. No. 128.

As an initial matter, Schindler notes that the MA,[1] drafted by Hertz, incorrectly identifies the corporate name "Hertz 400 Poydras LLC,"[2] who is not a party to the lawsuit.  (Rec. Doc. No 119-3 at 6).

Schindler asserts that provision II(A) of the Addendum to the MA requires that any defense or indemnity obligation on behalf of it *must arise from services contemplated* under the MA and that plaintiff's accident was not the result of any services contemplated under the MA.  (Rec. Doc. No. 119-3 at 6, 9).  There is no evidence that plaintiff's accident was the result of Schindler's failure to provide services under the terms of the MA.

Finally, Schindler contends that Hertz's own contractual language (*See* Rec. Doc. No. 126-2, p.10 at II(E)) requires Hertz to

---

[1] The Maintenance Agreement includes both the Contract and its corresponding Addendum.  (*See* Rec. Doc. No. 126-2).

[2] Page 5 of the contract states "Attached Addendum to Contract dated August 9th, 2005 between [Schindler] and Hertz 400 Poydras, LLC is hereby included as part of this agreement." (Rec. Doc. No. 126-2 at 5).

Additionally, the addendum to the contract is entitled "Addendum to Contract . . . By and Between [Schindler] as Contractor and Hertz 400 Poydras, LLC as owner."  (Rec. Doc. No. 126-2 at 8).

reimburse Schindler for its expenses, damages, and defense costs as a result of the Indemnitee's (Hertz) respective portion of comparative negligence. (Rec. Doc. No. 119-3 at 17).

Hertz concedes that the incorrect corporate name, "Hertz 400 Poydras LLC," was placed on the MA. (Rec. Doc. No. 123-1 at 9). However, it contends that the MA is valid and enforceable because Schindler ratified the MA by performing maintenance to the elevators since the inception of the MA and in procuring insurance on behalf of Hertz as required by the MA. (Rec. Doc. No. 123-1 at 9).

In support of its contention, Hertz argues that the MA was in effect at the time of plaintiff's accident and that Schindler's mechanics performed maintenance of the elevators at the 601 Tchoupitoulas parking garage and Texaco Center prior to and after the plaintiff's accident. (Rec. Doc. No. 123-1). Additionally, Hertz argues that Schindler forwarded correspondence to "Hertz Group 400 Poydras, LLC" from Schindler, in particular that Schindler invoiced $264, 425.75 to Hertz for maintenance performed under the MA and that said invoice was paid in full. (Rec. Doc. No. 123-1 at 10). Hertz contends that Schindler further ratified the contract at issue, when it obtained liability insurance naming Hertz as additional insureds. (Rec. Doc. No. 123-1 at 11).

Hertz faced a risk of liability for the alleged acts and omissions raised by plaintiff because it did not have a procedure

in place to remove an elevator from service; never gave U.S. Security or Central Parking clear written procedures for addressing elevator malfunctions at the 601 Tchoupitoulas parking garage, and no employee of U.S. Security or Central Parking had a key to turn off a malfunctioning elevator. (Rec. Doc. No. 123-1 at 19). Hertz shows that plaintiff's injuries and resulting $200,000 in medical bills for treatment indicate settlement with plaintiff for $250,000 was reasonable and in its best interest. Id. at 20.

Hertz seeks that to invoke the indemnity provisions of the MA against Schindler for the amount of $191,834.92 in attorney fees and litigation expenses and the $250,000 settlement paid to plaintiff.

Schindler contends that the case of *James v. Hyatt Corp. of Delaware*, 981 F.2d 810 (5th Cir. 1993), is analogous with the case at bar. Schindler argues that in *James* the court determined that under Louisiana law an insurer is not required to defend a party who is not a named insured as opposed to an additional insured and that the same principle is applicable to the case at bar. (Rec. Doc. No. 126 at 3).

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

5

of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986).  Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.  Id.  Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.  *Travelers Ins. Co. v. Liljeberg Enter., Inc*. 7 F.3d 1203, 1207 (5th Cir. 1993).

Hertz notes that whether a contract has ambiguous language is a question of law.  *Claitor v. Delahoussye*, 858 So.2d 469,478 (La. App. 1 Cir. 2003). However, in light of *James*, summary judgment cannot be entered in favor of Hertz.  In *James*, the Fifth Circuit determined that the finding of the indemmnitor's negligence was a prerequisite to indemnification, when language of the agreement referenced the indemnitor's negligence, "a negligence finding is a prerequisite to indemnification by the contractor to the owner under this contract and as no negligence was found herein,

6

appellant is not entitled to indemnification." *James*, 981 F.2d at 815.  Here, Hertz's own elevator expert acknowledged that there was nothing that Schindler could have done to prevent the accident. (Rec. Doc. No. 119-10 at 87-89).  Additionally, Hertz fails to offer any material facts to trigger Schindler's indemnification responsibility under the MA.

Additionally, Hertz's own contract states that it, as the Indemnitees, will reimburse Schindler "based upon their respective portion of comparative negligence . . . .," (Rec. Doc. No. 126-2 at 10),unless the negligence was determined to be caused by Schindler.

Moreover, Hertz fails to delineate which contractual provisions were breached. It just merely asserts that the contract was breached.  *See e.g.*, *Travelers Ins. Co.,* 7 F.3d at 1207.

In the case of actual controversy, a federal court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. 28 U.S.C.A. §2201. Any such declaration shall have the force and effect of a final judgment or decree. *Id*. A declaratory judgment is ripe only where a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests. *Venator Group Specialty, Inc. v. Matthew/Muniot Family, LLC*, 322 F.3d 835, 838 (5th Cir. 2003). The declaratory judgment action requires an actual controversy, not one that is

"hypothetical, conjectural, conditional, or based upon the possibility of a factual situation that may never develop." *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989). The dispute must be definite and concrete, touching the legal relations of parties having adverse legal interests. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The decision to grant declaratory relief is statutorily committed to the district court's discretion. *Venator Group Specialty, Inc.*, 322 F.3d at 838.

It is well established that "[i]n case of doubt that cannot otherwise be resolved, a provision in a contract must be interpreted against the party who furnished its text." LSA-C.C. Art. 2056. At issue, there is significant ambiguity concerning the MA. Hertz's MA fails to properly identify whom Schindler must indemnify. Hertz even concedes there was an error in identifying to whom Schindler must defend and indemnify. The party identified in the MA (Hertz 400 Poydras, LLC) is not even a party to the instant litigation. Further, indemnitor's are not generally responsible for indemnifying an indemnitee for the indemnitee's own negligence. *Polozola v. Garlock*, 343 So.2d 1000 (La. 1997).

Moreover, section II(E) of the MA states that Hertz will reimburse Schindler based upon "their respective portion of comparative negligence," yet Hertz fails to demonstrate how Schindler was negligent in the instant matter.

Given this and the reasons outlined in the Summary Judgment

discussion above, Schindler's motion for declaratory judgment is granted.

New Orleans, Louisiana, this 4TH day of October, 2011.

_____
                     UNITED STATES DISTRICT JUDGE